IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DEIDRA WOLF,

       Plaintiff,

vs.                             Civ. No. 99-684 DJS/WWD

CITY OF ALAMOGORDO, an
incorporated city, et al.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment on Count I of Plaintiff's Complaint filed May 4, 2000 and Defendants' Motion for Summary Judgment on Count IV of Plaintiff's Complaint filed May 16, 2000.  Defendants assert that pursuant to Fed.R.Civ.P. 56, they are entitled to summary judgment on Counts I and IV of Plaintiff's Complaint.  Count I is a claim for gender based discrimination.  Count IV is a claim for breach of contract.

Plaintiff filed her Complaint on June 21, 1999.  Plaintiff alleges she was sexually harassed by her co-worker and supervisor, Defendant James Anderson.  On March 6, 2000 the Court granted Defendants' Motion to Dismiss Counts II and III of the Complaint.  Counts I and IV remain as the subject of the instant motion.

As shown below Plaintiff appears to argue that any and all sexual contact between a supervisor and an employee is *per se*

1

sexual harassment.  The law does not support this assertion.

**Legal Standard**

A motion for summary judgment may be granted only when there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law. Fed. R. Civ.P. 56(c). Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits show that there is no genuine issue as to any material fact. <u>Id</u>. When applying this standard, the Court examines the record and reasonable inferences in light most favorable to the non-moving party. <u>See</u> <u>Koch v. Koch Indus., Inc.</u>, 203 F. 3d 1202, (10th Cir. 2000). The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. <u>See</u> <u>Adickes v. S. H. Kress & Co.</u>, 398 U. S. 144, 157(1970). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. <u>Matsushita Electric Indus. Co. v. Zenith Radio Corp</u>., 475 U.S. 574, 587 (1986).  The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. <u>See</u> <u>Celotex v. Catrett</u>, 477 U. S. 317, 323 (1986).  Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest

upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof. See Koch, 203 F. 3d at 1202. It is not sufficient to simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co  475 U.S. at 586.  An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion. See Koch, 203 F. 3d at 1202. The mere existence of a scintilla of evidence in support of the plaintiff's position is insufficient to defeat a properly supported motion for summary judgment. Id.

**Factual Background**

The following facts are either uncontroverted or are based on evidence submitted with summary judgment papers viewed in a light most favorable to the nonmoving party.  Immaterial facts and facts not properly supported by the record are omitted.

The Plaintiff was employed as a lifeguard for the City of Alamogordo during 1990-92, 1994-1996 and 1998.  In April of 1996, she and some coworkers including Defendant James Anderson went out after work for a drink.  The group met for drinks at around 12:00 a.m.  Plaintiff drank two shots of tequila and a mixed drink. Although Plaintiff's friend Sue Constable offered her a ride home, Plaintiff wanted to stay so she asked if someone could give her a ride home.  Defendant Anderson offered a ride home, which Plaintiff

accepted.  At around 2:00 a.m. Defendant Anderson drove Plaintiff home, and the two of them conversed during this period.  Defendant Anderson parked in front of Plaintiff's home and they continued talking.  Anderson told Plaintiff he was going to be a pool supervisor for the summer.  He said that he had already been promoted and that the promotion would become effective within days.  Anderson told Plaintiff who would not be hired for the summer and who would be demoted.  Anderson also told Plaintiff what kind of work she would be doing that summer.  Anderson stated to Plaintiff that he had the ability to fire pool workers.  However, Anderson did not say he was going to fire anyone.

During this conversation the Plaintiff told Anderson about difficulties in her marriage, revealing intimate sexual details.  Specifically, Plaintiff told Anderson that her husband did not perform oral sex as she desired.  After this discussion, Anderson kissed Plaintiff, who responded by kissing him.  Plaintiff alleges that after this Anderson told Plaintiff he would take care of her, promising additional work hours.  Anderson then, with Plaintiff's apparent concurrence, moved the car down the street so that Plaintiff's husband and children would not be able to see them from the family home.  Plaintiff and Anderson engaged in consensual sex, undertaken by Plaintiff performing oral sex on Anderson.  Plaintiff thought that the more she pleased Anderson the more hours of work he would give her, which would alleviate the financial difficulties she had encountered.  Anderson later told Plaintiff not to tell

anyone what happened in the car because one or both of them would be fired.  When asked by Anderson if she would do it all over again she said she "didn't know" because she felt really bad about cheating on her husband.  There was no further sexual contact between Plaintiff and Anderson.  This incident and the conversation described above are Plaintiff's sole ground for her claim of sexual harassment.

On June 24, 1996, two months after the incident, Plaintiff told her supervisor, Defendant Mimi Kalb, that she was having problems in her family life that stemmed from an "affair" or "fling" in which she was involved.  The next day, in another conversation, Plaintiff identified Anderson as the person with whom she had had the "affair" or "fling."  Plaintiff did not tell Kalb that Anderson sexually harassed her.   Plaintiff felt remorse because she had "cheated" on her husband.  Kalb told Plaintiff that what went on in Plaintiff's private life was her own affair.[1] Plaintiff never again discussed this incident with Kalb or anyone else in a supervisory position.  No formal report of the sexual conduct was ever made, because Plaintiff did not believe it would be effective.  In talking with her subordinate city workers, Plaintiff learned that some had experienced problems of a sexual

---

[1]Plaintiff attempts to create an issue of fact as to whether Anderson had a history of sexually harassing females under his supervision and whether the City knew of that history.  The evidence submitted by Plaintiff is inadmissible pursuant to Fed.R.Civ.P. 56 in that it is hearsay.  Further, the documents attached were not authenticated.

nature with Anderson but she did not report these problems to her supervisor.

On July 9, 1996 several pool staff members told Kalb they had been sexually harassed by Anderson and that they had reported this to the Plaintiff who instructed them not to tell anyone of their complaints.  Later, Plaintiff began contacting staff members about these complaints, apparently with the idea of a lawsuit in mind. Upon hearing of these inquiries, Anderson threatened to have Plaintiff fired.  Plaintiff was subsequently reprimanded for her failure to report these complaints.  Anderson resigned from his employment on July 18, 1996.  On July 29, 1996 after an investigation, Kalb recommended that Plaintiff be terminated for failing to report the sexual harassment complaints.  Approximately one week later Kalb rescinded her recommendation of termination and instead recommended a one week suspension with pay for Plaintiff. Approximately two weeks later, on August 18, 1996, Plaintiff resigned stating she had taken another employment offer.  In December of 1998 Plaintiff was rehired as a lifeguard under the supervision of Kalb.  It was Kalb who hired Plaintiff and Kalb who promoted her during this second period of employment with the City of Alamogordo.

**Discussion**

*Sexual Harassment*

The Courts recognize two distinct forms of sexual harassment

claims, *quid pro quo* and hostile work environment.  Hicks v. Gates
Rubber Co., 833 F.2d 1406 (10th Cir. 1987).  For purposes of this
motion, the Court will assume that Plaintiff has made a claim based
on both forms.  *Quid pro quo* harassment occurs when submission to
sexual conduct is made a condition of concrete employment benefits.
Hicks v. Gates Rubber Co., 833 F.2d 1406 (10th Cir. 1987), citing
Henson v. City of Dundee, 682 F.2d 897, 908 (11th Cir. 1982).  A
claim for hostile work environment arises when there is severe and
pervasive sexual conduct creating an intimidating, hostile or
offensive environment.  Abeyta By Martinez v. Chama Valley
Independent School Dist. No. 19, 77 F.3d 1253 (10th Cir. 1996).  The
Plaintiff must also show that the conduct was severe or pervasive
enough to create both "an objectively hostile or abusive work
environment" and an environment that the employee subjectively
perceived as abusive.  Harris v. Forklift Systems, Inc., 510 U.S.
17, 21-22, (1993).  To determine whether an environment is hostile
or abusive, the court looks to the totality of the circumstances.
Id.  These circumstances may include the frequency of the
discriminatory conduct; its severity; whether it is physically
threatening or humiliating, or a mere offensive utterance; and
whether it unreasonably interferes with an employee's work
performance.  Id. at 23.

The elements of *quid quo pro* and hostile work environment are
essentially the same.  To prove a *prima facie* case Plaintiff must

7

prove that: (1) the employee belongs to a protected group; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; and (4) the harassment complained of affected a "term, condition, or privilege" of employment.  <u>Henson</u>, 682 F.2d at 903-04.

The gravamen of any sexual harassment claim and an essential element is that the alleged sexual advances were unwelcome. <u>Meritor Savings Bank v. Vincon</u>, 477 U.S. 57, 68 (1986).  The court in <u>Henson</u> defined unwelcome sexual conduct as conduct that "the employee did not solicit or incite...and...that the employee regarded as undesirable or offensive."  <u>Henson</u>, 683 F.2d at 903.

Plaintiff is correct in that a plaintiff's voluntary participation in sex does not foreclose a finding that sexual conduct was unwelcome.  <u>Meritor</u>, 477 U.S. at 68.  In determining whether the conduct was unwelcome, a court must consider the conduct of the Plaintiff.  There is no evidence that Plaintiff indicated by her conduct that the advances to her were unwelcome. Rather the evidence is to the contrary.  She talked to Anderson for a length of time in the car.  She stayed in the car after Anderson moved it so that her family could not observe them.  She kissed Anderson after he kissed her.  And then she engaged in oral sex without any promises or threats from Anderson, and without his request. In her own words, she called the encounter an "affair" or "fling."  The conclusory assertion by Plaintiff that the encounter was unwelcome is insufficient in these circumstances.  It does not

8

create an issue of fact that will defeat the motion for summary judgment.

Certainly, Plaintiff's night out with Anderson does not rise to the level of creating a hostile environment. There is only one encounter at issue and that occurred outside of the workplace. It was not threatening physically or otherwise and it did not significantly interfere with the Plaintiff's employment. Further, Anderson's one comment that he was going to fire Plaintiff does not establish a hostile work environment. The conduct was not severe or pervasive.

Plaintiff presents no evidence to support the fourth element necessary to establish a *prima facie* case of sexual harassment. Plaintiff's evidence is that she engaged in sexual conduct in hopes of obtaining a benefit. No evidence has been presented that Anderson threatened to fire her or interfere with her job in any way if she did not engage in sex with him. Thus, there was no affect to a "term, condition, or privilege" of employment. <u>Henson</u>, *supra* at 903-04.

### *Retaliation*

To establish a *prima facie* case of retaliation in violation of Title VII the Plaintiff must show: (1) she engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding; (2) she suffered an adverse employment action contemporaneous with or subsequent to such opposition or

participation; and (3) there is a causal connection between the protected activity and the adverse employment action.   <u>Cole v. Ruidoso Municipal Schools</u>, 43 F.3d 1373, 1381 (10th Cir. 1994).

To meet the first element, Plaintiff argues that she reported the incident between she and Anderson to her supervisor, Kalb.  It is undisputed that Plaintiff did not at any time make a complaint, formal or informal of sexual harassment to Kalb. Rather, when Plaintiff had to leave work early, she told Kalb it was because she was having family problems as a result of an "affair or a fling." When Plaintiff told Kalb this she did not relate the fling or affair to her employment.  Plaintiff argues that she reported the sexual harassment by Anderson to the Alamogordo Police Department, which initiated an investigation.  This argument does violence to the evidence concerning contact with the police.  The deposition testimony shows that Anderson reported to the police that Plaintiff's husband was stalking him which led Plaintiff to tell the police that she had been sexually harassed, a statement apparently made to protect her husband.  Thus, it was the police and not the Plaintiff who reported the allegation of sexual harassment to the City.

Further, Plaintiff has failed to establish any adverse employment action as a matter of law.  The alleged adverse employment action is her suspension with pay.  It is important to note that subsequent to this suspension Plaintiff does not allege nor were there any further adverse employment actions or reactions.

10

She resigned from the City to take another job.  Later she was rehired and promoted by the City.

"[C]ourts applying Title VII have consistently focused on ultimate employment decisions such as hiring, granting leave, promoting, and compensating...[and not] interlocutory or mediate decisions having no immediate effect upon employment decisions." Rowland v. Riley, 5 F. Supp. 2d 1,3 (D.D.C. 1998).  Though suspension with pay may be viewed as retaliatory treatment, it can only be when it engenders some negative consequences with respect to the plaintiff's employment. See Brown v. Bentsen, 921 F. Supp. 1,2 (D.D.C. 1995) cert. denied 522 U.S. 1032, (1997).  In applying the foregoing standards it is clear that this suspension with pay with no further consequences is, by law, not an adverse employment decision.

*Vicarious Liability*

Plaintiff has failed to make a *prima facie* case of harassment.  Thus, the City cannot be held liable.  Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

*Breach of Contract*

It is undisputed that the City of Alamogordo Personnel Manual is a contract between the City and its employees.  Further, it is undisputed that the Plaintiff was provided with a copy of the City's Personnel Manual.

In Plaintiff's cause of action for breach of contract it is

11

alleged that Defendant City of Alamogordo breached two specific portions of the personnel manual. Section 14.1404 entitled "EEO Grievance Procedures" which states at paragraph 1:

> Employees shall bring their grievance to the attention of their immediate supervisor or department head, who will investigate as necessary to determine the cause of the complaint and work with the employee to effect an equitable solution.

Plaintiff argues that when she told Supervisor Kalb of her sexual contact with Anderson, Defendant Kalb failed to investigate. The facts clearly show that Plaintiff did not make any kind of complaint, formal or informal, to Kalb. The record demonstrates that Plaintiff never told or suggested to Kalb that Plaintiff considered her evening and early morning with Anderson as sexual harassment. Rather, in order to get off work early, Plaintiff told Kalb that her "affair" with Anderson was causing problems at home. There are no facts in evidence to support Plaintiff's contention that she made a complaint of any Equal Employment Opportunity (EEO) violation. Kalb had no reason to conduct an investigation.

Plaintiff also alleges that the City took an adverse action against her because of her honest use of the grievance process. Section 7.738 entitled "Grievance Process" states that: "[e]mployees who avail themselves of the grievance process will not be disciplined nor shall any punitive action of any type result from their honest use of this process." This claim also fails because Plaintiff did not use the grievance process. Instead she

12

told a police officer of her allegation when her husband faced arrest for allegedly stalking Anderson.  The personnel manual does not contemplate the use of law enforcement officers to handle personnel matters.

Plaintiff alleges that she was disciplined for reporting Anderson's sexual harassment to Kalb.  This is a conclusory statement that must be disregarded.  <u>Tavery v. United States</u>, 32 F.3d 1423, 1426 n.4 (10th Cir. 1994).  There is no evidence that Plaintiff brought a grievance that would require an investigation.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that Defendants' Motion for Summary Judgment on Count I of Plaintiff's Complaint is granted;

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Count IV of Plaintiff's Complaint is granted; and

**FINALLY, IT IS ORDERED** that Plaintiff's Complaint and all the causes of action therein are dismissed with prejudice.

_____
Don J. Svet
**UNITED STATES MAGISTRATE JUDGE**

13